**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

AXEL MONTALVO,

                Plaintiff,

      v.                                          9:24-cv-00445 (AMN/MJK)

THE STATE OF NEW YORK *et al.*,

                Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

**THE LAW OFFICE OF**               **CHRISTOPHER H. FITZGERALD,**
**CHRISTOPHER FITZGERALD**     **ESQ.**
14 Wall Street – Suite 1603           **PAUL STEWART-STAND, ESQ.**
New York, New York 10005
*Attorneys for Plaintiff*

**HON. LETITIA JAMES**             **AIMEE COWAN, ESQ.**
New York State Attorney General
Syracuse Regional Office
300 South State Street – Suite 300
Syracuse, New York 13202
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On March 28, 2024, Plaintiff Axel Montalvo ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title II of the Americans with Disabilities Act, 42 § 12101 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act"), asserting claims arising out of his eventual loss of vision in one eye while incarcerated at Marcy Correctional Facility ("Marcy") against Defendants the State of New York ("New York State"), the New York State Department of Corrections and Community Supervision

("DOCCS"), Anthony Annucci, physicians Carl Koenigsmann, John Morley, Carol Moores, John T. Hammer, Paula Bozer, David S. Dinello, Shehab Zaki, and Robert Druger (collectively, "Defendants"), as well as numerous unidentified defendants.  Dkt. No. 1.  Plaintiff filed an amended complaint on June 28, 2024.  Dkt. No. 8 ("Amended Complaint").

Presently before the Court are Defendants' motions to dismiss the Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Rule 12").  Dkt. Nos. 15, 24 (together, the "Motion").  Plaintiff partially opposes the Motion, Dkt. Nos. 26-27, and Defendants filed reply papers in further support, Dkt. Nos. 30-31.  For the reasons set forth below, the Motion is granted in part and denied in part.

## II.     BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  The Parties and their Roles

Plaintiff was born in 1979 and was incarcerated at Marcy, a medium security prison in Oneida County, from July 5, 2018 until his release on September 29, 2022.  Dkt. No. 8 at ¶¶ 6, 10, 34, 69.

DOCCS is the agency that operates and maintains New York State's prisons and parole system.  *Id.* at ¶ 9.  Defendant Annucci was the commissioner of DOCCS at all relevant times.  *Id.* at ¶ 11.

Defendant Koenigsmann served as the Chief Medical Officer ("CMO") of DOCCS "until

late-2018[;]" Defendant Morley then served as CMO "[f]rom late-2018, up until mid-2020[;]" Defendant CMO Doe served as CMO "from mid-2020 through July 2020[;]" and Defendant Moores began serving as CMO two years later "in July 2022." *Id.* at ¶¶ 12-15. Plaintiff alleges that the CMO "is the ultimate arbiter of medical policy for DOCCS" and "normally does not treat individual patients." *Id.* at ¶¶ 79, 81.

At all relevant times, based on information and belief, Plaintiff alleges that Defendants Hammer, Bozer, and Dinello each served as a Regional Medical Director ("RMD"). *Id.* at ¶¶ 16-18. Plaintiff further alleges that DOCCS is organized around five geographic hubs, that each hub is "a group of correctional facilities within a region," and that an RMD is responsible for overseeing medical care in each hub. *Id.* at ¶ 86. Plaintiff alleges that, like the CMO, RMDs "were also responsible for crafting policies and procedures for medical treatment of patients in DOCCS' custody, including overseeing primary care guidelines for treatment." *Id.* at ¶ 84.

Plaintiff alleges that DOCCS employed, at all relevant times, Defendant Zaki as a physician at Marcy, *id.* at ¶ 19; Defendant Druger as an ophthalmologist at Walsh Medical Unit at Mohawk Correctional Facility ("Mohawk"), *id.* at ¶ 20; and also employed various unidentified defendants as medical professionals, *id.* at ¶¶ 21-32.

Plaintiff alleges that medical professionals like Defendant Zaki ("Facility Medical Providers") are "directly responsible for the healthcare of prisoners in the custody of DOCCS," *id.* at ¶ 88, and "are directly responsible for examining patients during sick cal[l] and scheduled examinations. . . . [and] respond[ing] to the medical complaints of patients regarding chronic pain, neurological, and other health issues," *id.* at ¶ 89.

Plaintiff further alleges that Facility Medical Providers "are directly responsible for submit[ting] referrals for patients to outside consultants and specialists," like Defendant Druger

("Specialists"), when the Facility Medical Provider is "not skilled or experienced enough to diagnose or treat specific conditions." *Id.* at ¶ 98; *see also id.* at ¶ 90 (alleging the Facility Medical Providers "are directly responsible for referring patients out for [S]pecialist diagnostic testing").

According to Plaintiff, the basic referral process is that a Facility Medical Provider submits a request which is reviewed (and approved or denied) by an outside "quality control" vendor for DOCCS. *Id.* at ¶¶ 100-101. The vendor allegedly "provide[s] utilization review of medical services received by incarcerated individuals to determine if the services provided were within the standard guidelines for care." *Id.* at ¶ 102. If the vendor denies the referral request, an RMD can override the denial. *Id.* at ¶ 101. If the vendor approves the referral request, the Specialist conducts the appointment and creates a report with his or her findings and recommendations. *Id.* at ¶¶ 103-04. The Facility Medical Provider then "personally review[s]" the report to, *inter alia*, decide whether to prescribe any medication recommended by the Specialist. *Id.* at ¶¶ 104-09. Plaintiff alleges that Specialists "have no ability to directly ensure prescriptions to DOCCS' patients[;] they can only make recommendations to" Facility Medical Providers "through their reports." *Id.* at ¶ 108.

Plaintiff sues various Defendants in both their individual and official capacities. *Id.* at 1.[1]

**B. Plaintiff's Factual Allegations**

When Plaintiff arrived at Marcy in July 2018, his "only diagnosed health issues were hypertension and asthma." *Id.* at ¶ 34. Plaintiff alleges that on or around November 1, 2018, during a routine checkup for eyeglasses, a non-party optometrist informed him that the pressure in his left eye was "extremely high" and "required emergency surgery to reduce." *Id.* at ¶ 35.

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

Plaintiff suggests that this optometrist diagnosed him with glaucoma. *Id.* at ¶¶ 36, 42. The optometrist also prescribed two medications, Latanoprost and Timolol, "to control and lower the pressure within both" of Plaintiff's eyes. *Id.* at ¶ 35.

Plaintiff understood that he was to administer both medications himself and not miss a dose. *Id.* at ¶ 37. Plaintiff was able to pick up the prescriptions himself from the prison pharmacy, as they were apparently classified by DOCCS as "self-carry" medications. *Id.* at ¶ 38. Plaintiff states that his prescriptions required him "upon waking up, to apply drops to each eye every fifteen minutes for the first two hours of the day and then once at night before going to sleep." *Id.* at ¶ 39. Plaintiff further alleges that these two medications were included in the DOCCS formulary book at all relevant times, and thus could be prescribed "without approval from an administrator." *Id.* at ¶¶ 92-96.

On May 15, 2019, Defendant Zaki referred Plaintiff to an eye Specialist. *Id.* at ¶ 40. Plaintiff was transported to Mohawk on or around November 12, 2019, where Defendant Druger evaluated Plaintiff's eyes and "confirmed" Plaintiff's glaucoma diagnosis. *Id.* at ¶¶ 41-42. Defendant Druger noted that the glaucoma was "stable," and requested a follow-up appointment within six months for further evaluation. *Id.* at ¶¶ 42-43. Defendant Druger "renewed" Plaintiff's prescriptions for Latanoprost and Timolol. *Id.* at ¶ 45. Plaintiff alleges that Defendant Druger also told him "that the prior dosages prescribed were incorrect and that Plaintiff required surgery at his next visit to stop fluid from building up inside his left eye." *Id.* at ¶ 46. Following this visit, Plaintiff alleges that he was seen by non-party optometrists at Mohawk several times, but surgery was never scheduled or performed. *Id.* at ¶ 47.

In May 2020, Plaintiff alleges that he stopped receiving his prescription for one of this two medications. *Id.* at ¶ 49. He alleges on information and belief that this prescription "was modified

without explanation from, evaluation by, or consultation with, a physician." *Id.* at ¶ 50. Plaintiff alleges that from May 2020 through April 23, 2021, his glaucoma was not monitored by a physician or an optometrist. *Id.* at ¶¶ 51-52. Plaintiff further alleges that he "frequently submitted medical slips requesting a medical visit due to discomfort, pain[,] and declining vision in his left eye." *Id.* at ¶ 53.

On or about April 22, 2021, Plaintiff filled out a sick call slip after he lost vision in his left eye. *Id.* at ¶ 54. The next morning, Plaintiff still could not see out of his left eye. *Id.* at ¶ 55. He was seen by a non-party nurse in Marcy's infirmary, who put in a request for him to see a physician "immediately." *Id.*

Several days later, on April 26, 2021, Defendant Zaki "finally" evaluated Plaintiff. *Id.* at ¶ 56. Defendant Zaki apparently noted that Plaintiff had "Glaucoma with Optic Atrophy in his left eye," that Plaintiff was originally scheduled to follow up with the glaucoma clinic in May 2020, that Plaintiff complained that his vision "has gotten worse-especially that of his left eye," and that Plaintiff needed to be scheduled for further evaluation at a glaucoma clinic. *Id.* at ¶ 57. Defendant Zaki's referral for Specialist care noted that the request was "Routine." *Id.* at ¶ 58.

On April 29, 2021, a non-party nurse working for DOCCS' quality control vendor "delayed" Defendant Zaki's referral request. *Id.* at ¶ 59. The nurse noted "Inappropriate Referral," "required additional information before the referral request could be approved," and requested "[p]lease change to GLA 'Initial' D/T >1 Yr. Since Last seen by GLA." *Id.*

On July 12, 2021, Plaintiff was "finally" taken to Upstate Medical Center in Syracuse ("Upstate"). *Id.* at ¶ 60. Plaintiff alleges that he "was told during this appointment that the optical nerve damage in his left eye was damaged beyond repair." *Id.* at ¶ 61. The non-party ophthalmologist who evaluated Plaintiff determined that Plaintiff had pressure in his left eye and

was developing glaucoma in his right eye. *Id.* at ¶ 62. A procedure was scheduled and Plaintiff received prescriptions for both medications again. *Id.* at ¶¶ 63-64.

On August 13, 2021, Plaintiff was seen by a non-party physician at Upstate. *Id.* at ¶ 65. This physician diagnosed Plaintiff's left eye condition as "'severe stage' ocular trauma as a result of glaucoma." *Id.* A second non-party physician performed a procedure to lower the pressure in Plaintiff's eyes. *Id.* Until this procedure, Plaintiff alleges that he "suffered extreme discomfort, pain, and headaches as a result of the dangerously high pressure in his eyes caused by his chronic glaucoma condition." *Id.* at ¶ 66. And since losing vision in his left eye, Plaintiff alleges that "he misjudges entrances to rooms and stairs, walks into walls and people[,]" "spills liquids and food[,]" and "is unable to return to work in construction." *Id.* at ¶ 67.

Following the procedure, Plaintiff "remained in DOCCS custody and continued to receive treatment for glaucoma of both eyes until his release on September 29, 2022." *Id.* at ¶ 69.

Plaintiff alleges, on information and belief, that he was eligible for parole in January 2022 "if he successfully participated in an early-parole eligible DOCCS Program." *Id.* at ¶ 70. Plaintiff alleges that he "was made ineligible" for this program "due to his chronic eye condition and the resulting pain, discomfort[,] and the required self-administration of prescription medications for treatment of the condition." *Id.* at ¶ 71. Plaintiff alleges that because he did not complete any early parole program, he served "all but two days of his full sentence." *Id.* at ¶¶ 72-73.

### C. Plaintiff's Legal Claims

Based on Plaintiff's factual allegations, he asserts four claims in the Amended Complaint: (i) under Section 1983, that Defendants Zaki, Druger, Hammer, Bozer, and Dinello were deliberately indifferent to Plaintiff's medical needs, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, *id.* at ¶¶ 110-19; (ii) under Section 1983, that

Defendants Annucci, Koenigsmann, Morley, CMO Doe, Moores, Hammer, Bozer, and Dinello violated Plaintiff's Fourteenth Amendment right to substantive due process, *id.* at ¶¶ 120-25; (iii) under Title II of the ADA, that New York State and DOCCS discriminated against Plaintiff, *id.* at ¶¶ 126-139; and (iv) under the Rehabilitation Act, that New York State and DOCCS discriminated against Plaintiff, *id.* at ¶¶ 140-45.

## III.    STANDARD OF REVIEW[2]

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

_____

[2] As detailed below, the Court need only address Defendants' arguments under Rule 12(b)(6) to resolve the Motion.

plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## IV.    DISCUSSION

In combination, Defendants' Motion seeks to dismiss all of Plaintiff's claims. Dkt. Nos. 15, 24, 30-31. Plaintiff largely opposes in response, but "agrees to dismiss the official capacity claims against any of the [D]efendants for claims under §1983." Dkt. No. 26 at 11; Dkt. No. 27 at 11. Accordingly, the Motion is granted as to these claims. *See, e.g., Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 138 (2d Cir. 2025) ("[A] Section 1983 claim for damages against a state official can only be asserted against that official in his or her *individual* capacity.") (alterations in original) (quoting *Al-Jundi v. Est. of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). The Court addresses the parties' competing arguments regarding Plaintiff's remaining claims below.

### A.    Eighth Amendment Deliberate Medical Indifference

"An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on such a claim, "a plaintiff must show: (1) the inadequacies in his medical care were objectively serious (the objective test); and (2) the defendant acted with deliberate indifference to his serious medical needs (the subjective test)." *Collins v. Figura*, No. 23-109, 2024 WL 1739084, at *1 (2d Cir. Apr. 23, 2024) (summary order) (citing *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)). "The term 'deliberate indifference describes a state of mind

more blameworthy than negligence,' but it is a standard that 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 631 (2d Cir. 2025) (first quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); and then citing *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996)). "This means 'that the charged official [must] act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (alterations in original) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)).

However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Wright v. Martin*, No. 23-7762, 2025 WL 1091221, at *3 (2d Cir. Apr. 8, 2025) (summary order) (first quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); and then citing *Estelle*, 429 U.S. at 107). And "[b]ecause the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing, *inter alia*, *Estelle*, 429 U.S. at 105-06).

### i.  Defendant Zaki

With respect to Defendant Zaki, Defendants do not contest that the allegations in the Amended Complaint are sufficient to satisfy the objective prong of an Eighth Amendment deliberate medical indifference claim. Defendants instead argue that Plaintiff has not sufficiently alleged the subjective prong. Dkt. No. 15-1 at 16-17; Dkt. No. 30 at 8.

This argument is unpersuasive. Accepting Plaintiff's well pled allegations as true and drawing all reasonable inferences in Plaintiff's favor at this stage, Defendant Zaki was a Facility Medical Provider at Marcy. Dkt. No. 8 at ¶¶ 19, 87. In that role, he was "directly responsible" for

Plaintiff's healthcare, including examining Plaintiff, addressing his medical complaints, prescribing him medication, referring him to Specialists outside Marcy, and reviewing and following up on the resulting reports and recommendations. *Id.* at ¶¶ 88-91, 98-100, 103-09.

Defendant Zaki referred Plaintiff to a Specialist who, in November 2019, recommended certain medical treatment as a result of Plaintiff's glaucoma diagnosis. *Id.* at ¶¶ 40-46. Plaintiff lost vision in his left eye in April 2021. *Id.* at ¶¶ 54-55. For most of the time between those two events, Plaintiff alleges that he did not fully receive the recommended medical treatment and had no physician monitoring his glaucoma, despite "frequently submit[ing] medical slips requesting a medical visit due to discomfort, pain[,] and declining vision in his left eye." *Id.* at ¶¶ 48-53. These allegations are sufficient "to make 'a showing that the official was subjectively aware of the risk.'" *Lara-Grimaldi*, 132 F.4th at 631 (quoting *Farmer*, 511 U.S. at 829); *see also Spavone*, 719 F.3d at 138 ("[A]wareness may be proven 'from the very fact that the risk was obvious.'") (quoting *Farmer*, 511 U.S. at 842).

Even after Plaintiff reported his loss of vision in April 2021, Defendant Zaki allegedly did not see him for several days and then generated a "Routine" referral that was flagged as "Inappropriate" by DOCCS' quality control vendor. Dkt. No. 8 at ¶¶ 54-59. Plaintiff was not evaluated by a Specialist until July 12, 2021, when he was informed "that the optical nerve damage in his left eye was damaged beyond repair." *Id.* at ¶¶ 60-61. On August 13, 2021, Plaintiff was diagnosed with "'severe stage' ocular trauma as a result of glaucoma" in his left eye, and underwent a procedure for both his eyes. *Id.* at ¶ 65. It thus appears that even after Plaintiff reported his loss of vision, Defendant Zaki's "Routine" referral, which was flagged as "Inappropriate," may have delayed for several more months the diagnosis and eventual treatment of Plaintiff's worsened medical condition. *See, e.g., Mallet*, 126 F.4th at 132 (stating that to

establish deliberate indifference, a plaintiff "must show that the acts or omissions of [defendants] 'evince[d] a conscious disregard of a substantial risk of serious harm'") (second alteration in original) (first quoting *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021); and then citing *Farmer*, 511 U.S. at 835).

For all of these reasons, the Court denies the Motion as to Plaintiff's Eighth Amendment claim against Defendant Zaki.

### ii. Defendant Druger

As with Defendant Zaki, Defendants argue that Plaintiff's Eighth Amendment claim against Defendant Druger fails at the subjective prong. Dkt. No. 24-3 at 15-16; Dkt. No. 31 at 7-8. Defendants further argue that any such claim against Defendant Druger is time barred. Dkt. No. 24-3 at 16-17; Dkt. No. 31 at 8-10. Given Plaintiff's significantly different allegations against Defender Druger, the Court agrees with both arguments.

The Amended Complaint alleges that, at all relevant times, Defendant Druger worked at Mohawk, an entirely separate prison from Marcy, where Plaintiff was housed and Defendant Zaki worked. Dkt. No. 8 at ¶¶ 6, 19, 20. On or around November 12, 2019, as a result of a referral from Defendant Zaki to see an eye Specialist, Plaintiff was transported from Marcy to Mohawk. *Id.* at ¶¶ 40-41. At Mohawk, Defendant Druger examined Plaintiff, "confirmed" Plaintiff's glaucoma diagnosis, determined that his glaucoma was "stable" at that time, "renewed" Plaintiff's prescriptions, "requested" a follow-up appointment within six months, and told Plaintiff that he would require surgery at that next visit. *Id.* at ¶¶ 42-46. The Amended Complaint does not allege that Defendant Druger had any subsequent involvement in Plaintiff's medical care or knowledge

of Plaintiff's medical needs, as Defendants correctly note.[3]  Dkt. No. 24-3 at 15-16.  In short, Plaintiff does not allege that Defendant Druger "failed to provide adequate treatment because [he] consciously disregarded a substantial risk to [Plaintiff's] health and safety."  *Mallet*, 126 F.4th at 132.

To the extent that Defendant Druger's alleged conduct could constitute deliberate medical indifference, the Court agrees with Defendants that any such claim is time-barred.  Dkt. No. 24-3 at 16-17.  Plaintiff alleges that Defendant Druger informed him in November 2019 that he needed certain medical treatment.  Dkt. No. 8 at ¶¶ 41-46.  No later than May 2020, Plaintiff was aware that he was not receiving such treatment and had "discomfort, pain and declining vision in his left eye" as a result.  *Id.* at ¶¶ 45, 49, 53.  To the extent that Plaintiff has an Eighth Amendment deliberate indifference claim against Dr. Druger, it thus accrued no later than May 31, 2020. *Mallet*, 126 F.4th at 132 (stating that an Eighth Amendment deliberate indifference claim accrues when a plaintiff "either knew or had reason to know both (1) that he suffered from an objectively serious medical condition while he was incarcerated and (2) that Defendants[ ] failed to provide adequate treatment because they consciously disregarded a substantial risk to his health and safety").  Plaintiff did not bring this claim until March 28, 2024, or approximately three years and ten months after it accrued.  As a result, Plaintiff's claim against Defendant Druger is time-barred.[4]

---

[3] The Amended Complaint alleges that Plaintiff saw a number of non-party optometrists at Mohawk after November 2019, but not Defendant Druger.  *Id.* at ¶ 47.  The Amended Complaint also alleges that Defendant Druger is an ophthalmologist, not an optometrist.  *Id.* at ¶ 41.

[4] Even if the Court accepted Plaintiff's position that the applicable statute of limitations was tolled for approximately seven months of this nearly four-year period, Dkt. No. 27 at 21-22, Plaintiff's claim against Defendant Druger remains untimely by several months.  *See Burton v. Harder*, No. 21-cv-1097, 2022 WL 846145, at *4-5 (N.D.N.Y. Mar. 22, 2022).  And because Plaintiff alleges no further conduct by Defendant Druger after November 2019, the continuing violation doctrine is not applicable.  *Lucente*, 980 F.3d at 309 ("The continuing violation doctrine, where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.'. . . . A claim will be timely, however, only if the plaintiff 'allege[s] . . . some non-time-barred acts' contributing to

*See, e.g., Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) ("The statute of limitations for § 1983 actions arising in New York is three years.") (citations omitted).

For all of these reasons, the Court grants this portion of the Motion and dismisses Plaintiff's Eighth Amendment claim against Defendant Druger.

### iii. Defendants Hammer, Bozer, and Dinello

Defendants argue that Plaintiff has not sufficiently pled the personal involvement of Defendants Hammer, Bozer, and Dinello. Dkt. No. 15-1 at 12-16; Dkt. No. 24-3 at 10-15. Plaintiff responds that these Defendants are "pled in the alternative," as he does not know which RMD supervised the hub in which Marcy and other prisons were located. Dkt. No. 27 at 17-19. Plaintiff contends that "[i]t can be inferred that any RMD supervising the Oneida-Watertown Hub was responsible for overseeing and reviewing Plaintiff's medical care," and states that he intends to dismiss his claims against any RMD "who was not individually involved in Plaintiff's medical care[.]" *Id.* at 18. Plaintiff further argues that RMDs could approve "non-formulary prescriptions and referrals to outside specialists" and, more generally, had supervisory authority. *Id.* at 15-16, 18-19; *see also* Dkt. No. 26 at 16.

To establish liability against an official under Section 1983, a plaintiff must allege that official's personal involvement in the alleged constitutional violation. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Under Section 1983, "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has

---

the violation.") (second and third alterations in original) (quoting *Harris v. City of New York*, 186 F.3d 243, 248, 250 (2d Cir. 1999)). In contrast, and as detailed previously, Plaintiff does allege continuing acts by Defendant Zaki. *See supra* Section IV.A.i.

violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

The Amended Complaint fails to allege the personal involvement of any RMD. Plaintiff's arguments to the contrary are unavailing.

First, the Amended Complaint does not allege that any RMD needed to approve Plaintiff's prescriptions. *See generally* Dkt. No. 8. Quite the opposite, as Plaintiff alleges that his two prescriptions were, at all relevant times, formulary "medications available for doctors to prescribe without approval from an administrator." *Id.* at ¶¶ 92-96. Given that Plaintiff's allegations do not involve "non-formulary prescriptions," Plaintiff's argument that an RMD may have needed to approve "non-formulary prescriptions" is beside the point. Dkt. No. 27 at 18. In any event, even if an RMD did have to approve Plaintiff's prescriptions, the Amended Complaint does not allege that any RMD denied those prescriptions. *See generally* Dkt. No. 8.

Second, and as Defendants note, the Amended Complaint also does not allege that an RMD needed to approve Plaintiff's referrals to Specialists. Dkt. No. 30 at 6 n.2; *see also* Dkt. No. 8 at ¶¶ 16-18, 84-86. Instead, the Amended Complaint alleges that "DOCCS' outside quality control provider . . . reviews the specialty appointment request and approves or denies it. If denied an RMD can override the denial." Dkt. No. 8 at ¶ 101. And the Amended Complaint does not allege that any referral was denied. *Id.* at ¶¶ 40-41, 58-60. Thus, Plaintiff's argument that an RMD might have been involved is unsupported by his allegations. *Lama v. Meta Platforms, Inc.*, 732 F. Supp. 3d 214, 223 (N.D.N.Y. 2024).

Third, while the Amended Complaint does allege that RMDs have supervisory authority over entire hubs, such general allegations are insufficient to allege supervisory liability for

purposes of Section 1983.[5]  *Cf. Hernandez*, 341 F.3d at 145 ("[Defendant] was responsible for overseeing Sing Sing's medical staff . . . but supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*.") (citation omitted).  As the Second Circuit has made clear, a plaintiff must establish that a supervisor "violated the Eighth Amendment by [his] own conduct, not by reason of [his] supervision of others who committed the violation.  [Plaintiff] must show that [the defendant] acted with deliberate indifference—meaning that [the defendant] personally knew of and disregarded an excessive risk to [plaintiff]'s health or safety." *Tangreti*, 983 F.3d at 619 (citation and quotations omitted).  The Amended Complaint fails to do this, and Plaintiff's argument that the personal involvement of an RMD should simply be "inferred" is unconvincing.  Dkt. No. 27 at 18; *see also Tangreti*, 983 F.3d at 620 ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.  In the context of the Eighth Amendment, that requires a showing of deliberate indifference on the part of the state-official[.]").

For all of these reasons, the Court grants this portion of the Motion and dismisses Plaintiff's Eighth Amendment claim against Defendants Hammer, Bozer, and Dinello.

### B.  Fourteenth Amendment Substantive Due Process

"The Fourteenth Amendment guarantees 'more than fair process'; it 'cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used

---

[5] To the extent that Plaintiff argues that RMDs also had policymaking authority, the Court agrees with Defendants that the Amended Complaint is "devoid of any allegations" that connect a resulting policy to Plaintiff's alleged harm and, further, that Plaintiff fails to plausibly allege the deliberate indifference of any policymaker.  Dkt. No. 15-1 at 15-16; Dkt. No. 24-3 at 14; *see also Robinson v. Phillips*, No. 22-cv-0945, 2023 WL 3170389, at *2 (N.D.N.Y. May 1, 2023).

to implement them.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (alteration in original) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).

Among the numerous grounds on which Defendants argue that Plaintiff's Fourteenth Amendment claim should be dismissed is the Amended Complaint's failure to allege the personal involvement of any named Defendant. Dkt. No. 15-1 at 17-22; Dkt. No. 24-3 at 17-21. Plaintiff largely fails to respond to this argument for most of the named Defendants.[6] Defendants are thus correct that Plaintiff "offers no clarification as to how *any* of the above-named defendants were personally involved in violating his substantive due process rights." Dkt. No. 30 at 9; *see also* Dkt. No. 31 at 11. Accordingly, the Court grants this portion of the Motion and dismisses Plaintiff's Fourteenth Amendment claim. *Tangreti*, 983 F.3d at 618.

### C. ADA and Rehabilitation Act Claims

"When brought together, claims under these two statutes may be treated identically." *Hilton v. Wright*, 673 F.3d 120, 128 n.7 (2d Cir. 2012) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). To establish a prima facie case of discrimination under either the ADA or the Rehabilitation Act, a plaintiff must "show that 1) he is a qualified individual with a disability; 2) DOCCS is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (citing *Henrietta D.*, 331 F.3d at 272). "A plaintiff alleging disability discrimination 'can base [his] claim on any of three available theories: (1) intentional discrimination (disparate

---

[6] Plaintiff's cursory one-sentence contention as to the hypothetical personal involvement of Defendants Hammer, Bozer, and Dinello, who are "pled in the alternative," Dkt. No. 27 at 24, remains unsupported by his allegations, *see generally* Dkt. No. 8, and fails for the reasons previously detailed, *see supra* Section IV.A.iii.

treatment); (2) disparate impact; and (3) failure to make reasonable accommodation.'" *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)).

Defendants raise numerous reasons why Plaintiff's ADA and Rehabilitation Act claims against New York State and DOCCS should be dismissed. Dkt. No. 15-1 at 22-30; Dkt. No. 30 at 11-15. Because the parties appear to assume that Plaintiff's allegations are sufficient to satisfy the first and second prongs of the prima facie analysis, the Court need only address the third prong, as that is where Plaintiff's argument that he has adequately alleged disparate treatment and failure to accommodate theories runs aground. Dkt. No. 26 at 22-30; *see also Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237, 254 (N.D.N.Y. 2023) ("[I]f Plaintiff fails to allege an actionable ADA violation at the outset, [ ] questions of sovereign immunity are irrelevant.") (second alteration in original) (quoting *Colon v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-cv-7432, 2017 WL 4157372, at *6 (S.D.N.Y. Sept. 15, 2017)).

As to disparate treatment, Plaintiff argues that New York State and DOCCS "fail[ed] to provide him with consistent medical care." Dkt. No. 26 at 23. But "[w]hen it comes to supporting that assertion, Plaintiff relies on the same underlying allegations of inadequate care. [He] does not point to discriminatory interactions, disparate treatment, or any other typical indicia of discrimination." *Freudenberg v. Cnty. of Orange*, No. 23-cv-847, 2024 WL 4307176, at *7 (S.D.N.Y. Sept. 25, 2024); *see generally* Dkt. No. 8. The Court thus agrees with Defendants that the Amended Complaint "is devoid of any allegation that [Plaintiff] was treated less favorably than others because of his disability." Dkt. No. 30 at 12. "As a result, plaintiff's claims are deficient because he fails to allege facts which plausibly suggest that he was treated differently because of his disability." *Sloley v. NYS DOCCS*, No. 23-cv-1469, 2024 WL 1079886, at *11 (N.D.N.Y. Jan.

19, 2024) (collecting cases).  And "courts routinely dismiss inmate ADA claims of inadequate medical treatment lacking allegations that the inmate 'was treated differently because of his or her disability.'"  *Freudenberg*, 2024 WL 4307176, at *7 (quoting *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010)) (collecting cases); *see also Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021) ("At its core, the issue here is not whether [plaintiff] was denied medical services *because* she has a disability.  Instead, her claim relates solely to whether she received adequate medical treatment in [ ] custody *for* her disability, and such a claim is not cognizable under the ADA.  To hold otherwise would allow inmates to litigate in federal court virtually every medical malpractice claim arising in a custodial setting under the auspices of the ADA.").

Plaintiff's reasonable accommodation theory also fails at the third prong.  "In examining this claim, [courts] ask whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'"  *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 273).

Plaintiff argues that he did not participate in an early parole program as a result of his loss of vision in one eye.  Dkt. No. 26 at 23, 26.  But Plaintiff does not allege that he was "legally entitled" to participate in such a program.  The Amended Complaint only alleges, upon information and belief, that Plaintiff "was eligible for parole if he successfully participated in an early-parole DOCCS Program."  Dkt. No. 8 at ¶ 70.  As the authority upon which Plaintiff relies makes clear, eligibility in this early parole program is statutorily restricted.  *Raymond v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 749 F. Supp. 3d 290, 298 (N.D.N.Y. 2024) (stating that eligibility under the statute is limited "to individuals who: (1) are under age 50; (2) are serving a sentence for a non-violent felony offense or certain burglary or robbery offenses; (3) are within three years of

eligibility for release to supervision, regardless of the length of their sentence; and (4) have not served a previous sentence for violent felony offense") (citing N.Y. Corr. Law § 865(1)).

Even if Plaintiff has sufficiently alleged that that he was "legally entitled" to participate in the early parole program, he does not allege that DOCCS actually denied him access to the program.  *See, e.g.,* Dkt. No. 8 at ¶ 135 (alleging that Plaintiff "could not participate" in the program because of "the very condition caused by Defendants' willful neglect of his medical needs").  In fact, Plaintiff's papers confirm that "he was rendered physically unable to participate in it due to the inadequate medical care provided by Defendants.  It can be reasonably inferred that the medical care had the effect of [ ] disqualifying Plaintiff from participating in the parole program[.]"  Dkt. No. 26 at 22.  The Court thus agrees with Defendants that Plaintiff's attempt to "repackage" his disparate treatment "allegations as a failure to accommodate theory" also fails.  *Freudenberg*, 2024 WL 4307176, at *8; *see also* Dkt. No. 30 at 12-14.

For all of these reasons, the Court grants this portion of the Motion and dismisses Plaintiff's ADA and Rehabilitation Act claims.

### D.  Leave to Amend

"While, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, 'leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend . . . for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).  "Moreover, a district court is under 'no obligation' to grant leave to amend when the plaintiff offers merely 'conclusory assertion[s]' that amendment would cure a complaint's deficiencies and 'fail[s] to disclose what additional allegations [he] would make which might lead to a different result.'"  *Abe v. New York*

*Univ.*, No. 14-cv-9323, 2016 WL 1275661, at *11 (S.D.N.Y. Mar. 30, 2016) (Sullivan, J.) (alterations in original) (first quoting *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004); and then citing *Hayden v. Cnty. of Nassau*, 180 F.3d 43, 53-54 (2d Cir. 1999)).

At the end of each of his opposition briefs, Plaintiff includes a one-sentence request for leave to further amend to "address any deficiencies identified by the Court." Dkt. No. 26 at 30; Dkt. No. 27 at 26. Defendants oppose Plaintiff's request as "both procedurally and substantively improper." Dkt. No. 30 at 15; Dkt. No. 31 at 14.

The Court agrees that leave to amend is not appropriate at this juncture. Defendants have raised many more arguments regarding the deficiencies in Plaintiff's now-dismissed claims than those addressed above. Plaintiff's cursory request fails to suggest how he could successfully amend any of his now-dismissed claims. *See, e.g., United States ex rel. Sisselman v. Zocdoc, Inc.*, No. 22-cv-861, 2024 WL 4305667, at *12 (S.D.N.Y. Sept. 26, 2024) ("The Second Circuit has consistently held that district courts may deny leave to amend when a plaintiff requests such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without offering any justification or attaching a proposed amended pleading.") (quoting *Cinema Vill. Cinemart, Inc. v. Regal Ent. Grp.*, No. 15-cv-05488, 2016 WL 571970, at *7 (S.D.N.Y. Sept. 16, 2016), *aff'd*, 708 F. App'x 29 (2d Cir. 2017)). As a result, Plaintiff's request for leave to amend is denied.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motions to dismiss, Dkt. Nos. 15, 24, are **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that all official capacity claims, as well as the second, third, and fourth claims

in the Amended Complaint, Dkt. No. 8, are **DISMISSED**; and the Court further

      **ORDERS** that Defendants New York State, DOCCS, Annucci, Koenigsmann, Morley, Chief Medical Officer Doe, Moores, Hammer, Bozer, Dinello, and Druger are **TERMINATED**; and the Court further

      **ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

      **IT IS SO ORDERED.**

Dated: August 26, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge